**ORIGINAL**

SUSAN M. KARTEN
(Application for Pro Hac Vice Pending)
200 West 57th St., Suite 900
New York, N.Y. 10019
Telephone: (212) 826-3800
Facsimile:  (212) 486-6583
Email: skarten@skartenlaw.com

CHARLES H. BROWER, #1980-0
900 Fort Street, #1210
Honolulu, HI 96813
Telephone: (808) 526-2688
Facsimile:  (808) 526-0307
Email: honlaw@lava.net

Attorney for Plaintiff
Michael Madoff, Individually and as
Administrator of the Estate of
Tyler Madoff, Deceased

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 2 1 2012

at ___ o'clock and ___ min. ___ M.
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

CV12  00470 SOM  RLP

| | |
|---|---|
| MICHAEL MADOFF, Individually ) | CIVIL NO. _____ |
| and as Administrator of the Estate of ) | |
| TYLER MADOFF, Deceased, ) | |
|  ) | COMPLAINT; EXHIBITS 1-4; |
| Plaintiff, ) | DEMAND FOR JURY TRIAL; |
|  ) | SUMMONS |
| vs. ) | |
|  ) | |
| BOLD EARTH TEEN ) | |
| ADVENTURES, AMERICA'S ) | |
| ADVENTURE, INC., ABBOTT ) | |
| WALLIS, ANDREW MORK, ) | |
| KELSEY TYLER,  HAWAII PACK ) | |
| AND PADDLE LLC, BARRY ) | |

MIMS, NOLAN KEOLA REED,     )
and LETITIA MIMS,                      )
                                                )
              Defendants.              )
_____)

## COMPLAINT

COMES NOW Plaintiff MICHAEL MADOFF (hereinafter "MADOFF"),

individually and as Administrator of the Estate of TYLER MADOFF, Deceased, by

and through his attorney, and for causes of action against Defendants, alleges and

avers as follows:

## NATURE OF CASE

Plaintiff Michael Madoff was the father and natural guardian of TYLER

MADOFF, deceased (hereinafter "TYLER").

TYLER was fifteen years of age at the time of his death as referenced herein,

and was the beloved son of his parents Plaintiff MADOFF and Marianne Madoff.

TYLER was also best friend to his older brother who is sixteen years old, and

devoted big brother to his younger sister who is six years old.

TYLER resided in White Plains, New York with his family.  He attended

Scarsdale High School where he excelled academically.   TYLER was also an

accomplished musician and proven athlete.  He was a respected and valued player on

both the Scarsdale High School football team as well as Pelham Community Rowing Association Crew team.

During the 2012 summer vacation from school, TYLER was enrolled in a Defendant BOLD EARTH TEEN ADVENTURES (hereinafter "BOLD EARTH") program called "Hawaiian Adventure". BOLD EARTH, whose office is located in Colorado, extensively markets itself on the internet with a website and promotes itself to be an adventure travel camp for teenagers operating under a registered corporation name of Defendant AMERICA'S ADVENTURE, INC. (hereinafter "AMERICA'S ADVENTURE"). BOLD EARTH further advertises to parents that their goal is to deliver an experience in leadership, independence, and challenge, "**which meets or exceeds your expectations for safety and growth**", and further promises "**professional and top notch guardianship**" for the teenagers.

The BOLD EARTH "Hawaiian Adventure" group that TYLER was a part of consisted of twelve teenagers under the supervision of two BOLD EARTH tour group team leaders with authority over the group. BOLD EARTH claims to perform background checks and training of said tour group team leaders, whose hiring, retention, certification, qualifications, and experience are significantly at issue herein.

The BOLD EARTH tour group team leaders included 22 year old Defendant ANDREW MORK (hereinafter "MORK") and Defendant KELSEY TYLER (hereinafter "KELSEY"), also in her early 20s. Records show that MORK has a documented history of criminal violations and acts evidencing a criminal background and irresponsibility and showing a questionable character, poor judgment, and lack of responsibility to perform guardianship duties as a reliable BOLD EARTH tour group team leader. MORK was the lead counselor on the tour of which TYLER was a member herein.

The BOLD EARTH "Hawaiian Adventure" itinerary included a July 4, 2012, kayaking excursion tour to the Kealakekua Bay Hawaii State Park in Captain Cook, Hawaii. As per the itinerary, this trip was to include a kayaking adventure, with a visit to the Captain Cook Monument located on the shore of Kealakekua Bay Park (Photograph Exhibit "1").

For this portion of the tour, BOLD EARTH hired the services of a local company Defendant HAWAII PACK AND PADDLE LLC (hereinafter "PACK AND PADDLE"), to supply kayaks and local guides for the aforesaid kayak trip to the Captain Cook Monument. The company is owned and operated by Defendant BARRY MIMS (hereinafter "MIMS") and the guides assigned to the group by MIMS

were his daughter Defendant LETITIA MIMS (hereinafter "LETITIA") and Defendant NOLAN KEOLA REED (hereinafter "OLA").

In an attempt to regulate the commercial kayak activity in the sacred Hawaiian area of the Captain Cook Monument, the State of Hawaii Land and Natural Resources Department issues only four commercial revocable permits to kayak tour companies, including Defendant PACK AND PADDLE.

As a condition of being granted said permits, the kayak tour companies must stay in designated areas around the Captain Cook Monument. The permit designates specifically for the kayaking tour companies where they can and cannot go. The failure to comply with said restrictions can lead to the revocations of the State of Hawaii issued permits.

Defendant PACK AND PADDLE, upon information and belief had such permit granted to it by the State of Hawaii in 2008, and the permit was renewed annually thereafter including for the year 2012 (Exhibit "2").

Neither Defendant PACK AND PADDLE, nor any other company has been granted a permit to be in the area of the Napoopoo lighthouse, where the incident referenced herein occurred.

On July 4, 2012, TYLER and his BOLD EARTH tour group went kayaking to the Kealakekua Bay State Park.  Under the supervision of both BOLD EARTH group team leaders MORK and KELSEY, as well as PACK AND PADDLE guides, OLA and LETITIA, the group kayaked across the bay from the wharf/kayak launching area to the Captain Cook Monument, where they landed and disembarked in the area permitted by the State of Hawaii.

Dangerous high surf and wave advisories, high tide, and other warnings had been issued by multiple sources for the Kona Coast for July 4, 2012, and the rest of the week (Exhibit "3").

Nearing the end of their kayaking day at Captain Cook Monument, the BOLD EARTH group team leaders in conjuction with the PACK AND PADDLE tour guides, ordered a deviation from the planned and allowed itinerary in direct violation of the State of Hawaii issued permit regulations.

Instead of returning from the Captain Cook Monument to the wharf/kayak launching area, the BOLD EARTH and PACK AND PADDLE team leaders and guides instructed the teenagers to abandon their kayaks and life jackets, and proceeded to lead the teenagers on a hike through a heavy brush and forested area to the south shore near the Napoopoo lighthouse.

The shore area around the Napoopoo lighthouse was a treacherous and off limits area which consisted of jagged and crater filled lava rock terrain, with violent surf pounding and churning the coastal area waters on July 4, 2012, and flowing through the jagged and cracked section of lava rock and into various tide pools in the area (Photographs attached as Exhibit "4").

The BOLD EARTH and PACK AND PADDLE tour team leaders and guides made a conscious decision to lead the teenagers from the safety of the bay to the treacherous lava rock area. This outrageously irresponsible decision lead to the death of TYLER as referenced herein.

There is no question that the area the teenages were brought to at the Napoopoo lighthouse is out of the State of Hawaii permitted area, and taking the teenagers to the area was in complete breach and violation of the State of Hawaii regulations regarding the permit issued to kayak to the Captain Cook Mounument.

The teenagers, including TYLER, were led to the tidal pools on the jagged and crater filled lava rocks by the BOLD EARTH team leaders and PACK AND PADDLE guides. They were instructed  to enter what the tour team leaders and guides referred as the "fun zone" of the tidal pools, adjacent to and in the area where waves were crashing upon the treacherous lava rock shoreline and filling up the tide pools, and then receding into the ocean.

This dangerous deviation from the permitted and allowed area of the permit was made notwithstanding, and in the face of the dangerous tide, wave, and surf warnings, and advisories posted on local, regional, state wide, and national surf information sources, including television news broadcasts.

While the teenages sat and waded in the tidal pool area, a series of the forecasted large waves struck and cascaded over the shoreline. Members of the group were thrashed and thrown in different directions by the violent waves. Some of the teenagers scrambled for cover out of the tide pools and attempted to grab on to anything to keep them from being swept back out of the tidal pools into the ocean by the violently receding waves.

Others, including TYLER were struck by the waves and smashed against the lava rocks in the tidal pools. TYLER was then carried away by the rushing, churning, receding waters through the jagged tidal pool toward the cliff of the shore line area and into the ocean.

Group team leader MORK, who was witnessed to be in close proximity to TYLER, and despite having a final opportunity to offer him assistance and attempt to provide help to TYLER, instead failed to act according to his alleged training and experience watched TYLER being swept into the ocean.

TYLER was last seen being swept through the tide pool by the raging waters and over the shore line cliffs into the ocean, never to be seen again.

A local fishing boat attempted to offer the group assistance, picking up one of the injured teenagers from the ocean, who also had been injured in the tide pool and swept out into the ocean.

Eventually, local Hawaii first responders, including the Hawaii County Fire Department, as well as members of the Police and Coast Guard came to the scene to search for TYLER, but to no avail.

Following the occurrence, the group team leaders and guides gathered the surviving teenagers and returned to the kayak landing area near the Captain Cook Monument and instructed  them to paddle across the bay back to the wharf/kayak launching area.

BOLD EARTH group team leader MORK, upon reaching shore, advised that he needed to take a shower, as the group was ministered to by grief counselors and given first aid, while KELSEY immediately contacted the Colorado offices of BOLD EARTH prior to contacting any of the families, including the Madoff family.

BOLD EARTH and it's president and founder, Defendant ABBOTT WALLIS (hereinafter "WALLIS"), and who operates the company, did not notify the Madoffs

until hours after the event, and despite having knowledge of the occurrence were more interested in assessing liability, than in the immediate, proper, and thoughtful notification and assistance to the families, including the Madoff family.

Neither WALLIS nor any representatives from BOLD EARTH came to Hawaii to assist or support the Madoff family upon their arrival in Hawaii on July 5, 2012, to visit the scene and search for their son. Moreover, despite being traumatized and in shock, the BOLD EARTH's group team leaders were not relieved and the teenagers on the "Hawaiian Adventure" were encouraged to stay on the "Hawaiian Adventure" despite what had happened to TYLER and the tour group.

The Madoff family was not contacted until hours after their son was lost and upon their frantic and grief stricken arrival in Hawaii, and throughout their tortured stay during the ongoing search for their son, were not provided with any assistance from BOLD EARTH nor WALLIS, and were intentionally not properly provided with all available correct information regarding the events that had caused the death of their son.

TYLER has been presumed dead, and his body has not been recovered. Memorial services were held by his family on July 26, 2012, in New York.

## JURISDICTION

Jurisdiction is by virtue of diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332(a)(1).

Plaintiff MADOFF is a resident of the State of New York. Defendant AMERICA'S ADVENTURE is a State of Colorado corporation doing business as Defendant BOLD EARTH with a principal office in the State of Colorado. Defendant WALLIS is a resident of the State of Colorado. Defendant MORK is a resident of the State of Wisconsin. Defendant KELSEY is a resident of the State of Illinois. Defendant PACK AND PADDLE is a Hawaii corporation. Defendants MIMS, LETICIA MIMS, and OLA are residents of the State of Hawaii.

The matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and cost.

## STATEMENT OF FACTS

1. At all time herein mentioned, Plaintiff decedent TYLER, was a resident of Westchester County, City and State of New York.

2. TYLER was fifteen years of age at the time of his death on July 4, 2012, and was the son of Plaintiff MADOFF and Marianne Madoff.

3.   Plaintiff MADOFF, is the father of the decedent, and his appointment as Administrator of the Estate of TYLER MADOFF has been filed and is presently pending before the Surrogate's Court of the State of New York, Westchester County.

4.   At all times herein mentioned TYLER was the best friend to his older sixteen year old brother, and devoted big brother to his younger six year old  sister.

5.   At all times herein mentioned TYLER resided in White Plains,  New York with his family, and he attended Scarsdale High School where he excelled academically.

6.   At all times herein mentioned, TYLER was an accomplished musician and a proven athlete, and was a respected and valued player on both the Scarsdale High School football team as well as Pelham Community Rowing Association Crew team.

7.   At all times herein mentioned, during the 2012 summer vacation from school, TYLER was enrolled in a BOLD EARTH Program called the "Hawaiian Adventure".

8.   Defendant BOLD EARTH was at all times mentioned herein a business owned and operated by Defendant AMERICAS ADVENTURE and Defendant WALLIS, which has its office in the State of Colorado and was doing business in the State of New York and State of Hawaii with tours operating around the world from

Alaska to California in the United States, Greece to Spain in Europe, Costa Rica to Peru in South and Central America, Australia to Fiji in the Pacific Asia region, and Mozambique to Swaziland in Africa.

9. At all times herein mentioned the Defendant AMERICA'S ADVENTURE was a State of Colorado corporation conducting business in the State of New York and State of Hawaii as well as other jurisdictions across the country and around the world and doing business as BOLD EARTH.

10. At all times herein mentioned, BOLD EARTH, has offices which are located in the State of Colorado, and extensively markets on the internet with a website and promotes itself to be an adventure travel camp for teenagers.

11. At all times herein mentioned, BOLD EARTH further advertises on it's website to parents that its goal is to deliver an experience in leadership, independence, and challenge, "which meets or exceeds your expectations for safety and growth", and further advertises "professional and top notch guardianship" of the teenagers who are entrusted to its care.

12. At all times herein mentioned AMERICA'S ADVENTURE President and founder is Defendant WALLIS, who is a resident of the State of Colorado.

13.   At all times herein mentioned, upon information and belief, BOLD EARTH, hired/retained/contracted with the company Defendant PACK AND PADDLE, which is a corporation formed in the State of Hawaii, to provide local tour guides and equipment for its "Hawaiian Adventure".

14.  At all times herein mentioned, Defendant MORK, is a resident of the State of Wisconsin, and was hired and retained as an employee, agent, servant, and representative of BOLD EARTH and AMERICA'S ADVENTURE.

15.   At all times herein mentioned the Defendant MORK, who was hired and retained to be a "team leader" for BOLD EARTH and AMERICA'S ADVENTURE, was acting in the scope of his employment with these entities.  MORK was the lead team leader on the tour which is the subject of this action.

16.   At all times herein mentioned, Defendant KELSEY, is a resident of the State of Illinois and was hired and retained as an employee, agent, servant, and representative of BOLD EARTH and AMERICA'S ADVENTURE.

17.  At all times herein mentioned Defendant KELSEY was hired and retained to be a "team leader" for BOLD EARTH and AMERICA'S ADVENTURE, and was acting in the scope of her employment with these entities.

18.  At all times herein mentioned, Defendant BOLD EARTH claims on it's website that:

> "All trips include one male and one female trip leader who are at least 21 years old". That "Our hiring process is competitive, resulting in what we believe to be the most professional, safe and experienced leaders in the industry. <u>We conduct an in-depth interview, check references and do a background check of all potential trip leaders</u>. (emphasis added) Organizational skills, sense of humor, safety and an ability to teach teenagers about leadership and adventure travel, are the qualities we value most."

19.  At all times herein mentioned, BOLD EARTH further states that teen adventures trip leaders "**will oversee and be responsible for campers at all times**" (emphasis added).

20.  At all times herein mentioned BOLD EARTH's basic team leader requirements are stated to be:

- A maximum of one moving violation on driving record for past three years.

- Previous work experience and responsibility with teenagers.

- Ability to work effectively and responsibly in a team situation.

- Patience, enthusiasm, safety consciousness, organizational skills, and flexibility.

- Possess proven decision making skills.

21. At all times herein mentioned, the BOLD EARTH team leaders assigned to the "Hawaiian Adventure" were KELSEY who is in her 20s, and twenty-two year old MORK.

22. At all times herein mentioned and upon information and belief, in complete violation of BOLD EARTH's own self proclaimed rigorous employment screening standards, public records show that team leader MORK had a questionable history and record reflecting disorderly conduct, possession of marijuana, and multiple traffic offenses prior to his being hired. Upon information and belief, on a BOLD EARTH trip to Hawaii the year before MORK had been ejected from a club in Hawaii due to improper behavior.

23. At all times herein mentioned Defendant PACK AND PADDLE was and is a Hawaii Corporation conducting guided kayak tours in the State of Hawaii, including to the Kealakekua Bay State Park.

24. At all times herein mentioned Defendant PACK AND PADDLE is owned by Defendant MIMS, a resident of the State of Hawaii, who purchased the business in 2012.

25. At all times herein mentioned PACK AND PADDLE advertises itself as "fully insured kayak/snorkel tour company that has permits to operate legally into one of the best snorkel areas in Hawaii, Kealakekua Bay.

26. At all times herein mentioned, PACK AND PADDLE represents that all of their guides are certified in First Aid and cardio pulmonary resuscitation (hereinafter "CPR"), and are all certified lifeguards.

27. At all times herein mentioned, Defendant LETITIA, a resident of the State of Hawaii, was hired and retained as an employee, agent, servant, and representative of PACK AND PADDLE.

28. At all times herein mentioned the Defendant LETITIA was hired and retained to be a guide for PACK AND PADDLE and was acting in the scope of her employment with regard to same.

29. At all times herein mentioned, Defendant OLA, a resident of the State of Hawaii, was hired and retained as an employee, agent, servant, and representative of PACK AND PADDLE.

30. At all times herein mentioned Defendant OLA was hired and retained to be a guide for PACK AND PADDLE and was acting in the scope of his employment with regard to same.

31. At all times herein mentioned, in and around January 2012, TYLER was enrolled on-line via the internet in a BOLD EARTH TEEN ADVENTURES program called "Hawaiian Adventure", which was to start on July 1, 2012, in Hawaii.

32. At all times herein mentioned, the BOLD EARTH "Hawaiian Adventure" group that TYLER was a part of consisted of twelve teenagers under the supervision

of BOLD EARTH tour group team leaders MORK and KELSEY, who had complete supervision and authority over the group.

33.   At all times herein mentioned, the BOLD EARTH  July 1, 2012, "Hawaiian Adventure" itinerary included a kayaking excursion tour to Kealakekua Bay State Park.

34.   At all times herein mentioned, as per the itinerary, this trip was to include a kayaking adventure, with a visit to the Captain Cook Memorial located on the shore of the Kealakekua Bay State Park (Photograph Exhibit "1").

35.   At all times herein mentioned, the BOLD EARTH group's kayaking adventure was accompanied by PACK AND PADDLE guides, OLA and LETITIA.

36. Upon information and belief, the PACK AND PADDLE guides were relied upon for their knowledge and expertise regarding Kealakekua Bay State Park, and tide and water conditions in the areas around Kealakekua Bay.

37.   At all times herein mentioned, The State of Hawaii Department of Land and Natural Resources regulated and issued permits for commercial kayaking activities at Kealakekua Bay.

38.   Upon information and belief PACK AND PADDLE had been issued a permit by the State with specific conditions for landing and hiking in the Kealakekua Bay State Park (Exhibit "2").

39.   The permit also required that all guides be made aware of each condition for landing and hiking in Kealakekua Bay.

-18-

40.  Upon information and belief, the State of Hawaii Department of Land and Natural Resources further required that the permittee guides must maintain current certifications in CPR techniques, lifeguard training, and First Aid by the American Red Cross, or other nationally recognized certification agency.

41.  Upon information and belief, the State of Hawaii Department of Land and Natural Resources requires that permittees' guides shall each carry and be equipped with the following safety gear:

- 50 foot tow line

- Knife

- Whistle

- Arial flare

- First Aid Kit

- Bow and Stern Line

- Flashlight: and

- Two way radio or cell phone (with direct communication with land-based operations).

42.  Upon information and belief, the State of Hawaii Department of Land and Natural Resources requires that during kayak tours, guides shall have the ability to be in radio or cell phone communication with at least one land based person at the wharf/kayak launching area, and further that prior to entering the water, permittee shall give to each passenger, guest, or invitee a safety briefing.

43.   Upon information and belief, on the morning of July 4, 2012, the BOLD EARTH group along with PACK AND PADDLE guides started their kayaking excursion.

44.   Upon information and belief, both the BOLD EARTH team leaders and PACK AND PADDLE guides were young people in their 20s, inexperienced, who lacked the proper and requisite experience and proper level of responsibility to conduct the kayak tour with the twelve teenagers in their care.

45.   Upon information and belief, on July 4, 2012, high tide, surf, wave, and tidal warnings had been issued for the south coast of the Island of Hawaii including the Kealakekua Bay (Exhibit "3").

46.   Upon information and belief neither team leader checked nor made themselves aware of the dangerous conditions predicted for Kealakekua Bay and the Kona coastline.

47.   Upon information and belief, said warnings were not properly known, heeded, nor respected, and were otherwise disregarded by the BOLD EARTH group team leaders and tour guides from PACK AND PADDLE.

48.   At all times herein, on the morning of July 4, 2012, the group kayaked and snorkeled in the permitted area of the Captain Cook Monument.

49.   At all times herein mentioned, in the afternoon as the group was nearing the end of their kayaking day, and pursuant to the planned itinerary, were scheduled to kayak back to the wharf/kayak launching area and then to their camp.

50. Upon information and belief, instead of safely returning by kayak to their launch point, the BOLD EARTH team leaders, in conjunction and consultation with their PACK AND PADDLE guides, decided to embark on an "off permit" hike in direct violation of the State of Hawaii permit rules and regulations.

51. Upon information and belief, the group team leaders instructed the teenagers too abandon their kayaks and life jackets, and led them on a half mile hike out of the permitted area, and into and through a heavily forested area to the south shore which was the treacherous shoreline tidal pool area near the Napoopoo lighthouse (Photographs attached as Exhibit "4").

52. At all times herein mentioned, the team leaders and their guides did not have required communication and rescue equipment.

53. Upon information and belief, said actions constituted a gross and reckless deviation from the planned itinerary and in direct violation of the State of Hawaii permit.

54. At all times herein mentioned, the teenagers were taken to an off limits, hazardous, and dangerous shore area consisting of a jagged and crater filled lava rock terrain shoreline with violent surf pounding and churning the coastal area and flowing through the jagged and cracked section of lava rock (Photographs attached as Exhibit "4").

55. The teenage group was escorted directly to the tidal pool area by the BOLD EARTH team leaders  and PACK AND PADDLE guides.  They were

instructed to enter the dangerous "fun zone" of the churning tidal pools as waves crashed upon the treacherous lava rock shoreline.

56. Upon information and belief, this wanton and reckless deviation was made notwithstanding, and in the face of the significant tide and surf warnings and advisories posted on local, regional, state, and national surf information sources, including the television news broadcasts (Exhibit "3").

57. At all times herein mentioned, both the BOLD EARTH team leaders and PACK AND PADDLE guides led the group including TYLER, into a very treacherous and dangerous area.

58. At all times herein mentioned, while the group including TYLER, waded in the tidal pool area, a series of forecasted large waves struck and cascaded over the shoreline, crashing upon the group in the tidal pool.

59. Members of the group were scattered and thrown in different directions by the violent waves. Some members scrambled for cover outside of the tidal pools and grabbed onto anything to keep from being swept back through the torrents of the receding waves.

60. At all times herein, members of the tour group including TYLER were struck directly by the incoming waves and their bodies were smashed against the tidal pool area lava rocks.

61. Thereafter, TYLER was seen being carried by the rushing receding waters through the jagged pools toward the cliff of the shore line and into the ocean.

62.  Upon information and belief, BOLD EARTH team leader MORK, despite his proximity to TYLER and despite having an opportunity to attempt to rescue and/or provide assistance and help to TYLER, instead failed to act as he was allegedly trained to do, and watched TYLER being carried off into the ocean.

63.  TYLER was last seen being swept through the tidal pools by the raging waters and over the shore line cliffs into the ocean, never to be seen again.

64.  At all times herein mentioned, a timely search and rescue response was hampered and delayed by the failure of BOLD EARTH team leaders and PACK AND PADDLE guides to have requisite communication and rescue equipment.

65.  At all times herein mentioned, a local fishing boat offered the group assistance, but was unable at first to come close to the shoreline because of the severe surf conditions, but eventually was able to pick up another injured member of the group from the ocean, but was unable to locate TYLER.

66.  Local Hawai first responders including the Hawaiian County Fire Department, as well as Police and the Coast Guard personnel came to the scene to search for TYLER, all to no avail.

67.  Following the occurrence, the team leaders gathered the group and returned to the kayak landing area near the Captain Cook Monument and then to the wharf/kayak launching area.

68.  Upon information and belief, at all times herein mentioned, team leader MORK was incapable of managing the crisis situation and remained stunned by the events of the day.

69.  At all times herein mentioned, team leader MORK requested a shower prior to speaking with police while the teenagers were provided first aid for their injuries and ministered to by grief counselors.

70.  Upon information and belief, while many of the teenagers in the group who were themselves injured requested cell phones to call their parents, team leader KELSEY discouraged them from doing so until the BOLD EARTH team leader contacted WALLIS.

71.  Upon information and belief, the BOLD EARTH team leaders contacted the Colorado offices of BOLD EARTH prior to contacting the Madoff family.

72.  At all times herein mentioned, the Madoff family was not notified until hours after their son's disappearance and hours after BOLD EARTH became aware of the incident.

73.  Upon information and belief, at all times herein mentioned, from the time of the event BOLD EARTH and its president and founder WALLIS were more interested in assessing liability and conducting information control than in rendering proper and thoughtful notification and assistance to the Madoff family, and the other families.

74.   At all times herein mentioned, BOLD EARTH did not send anyone to Kona to assist the Madoff family and or the group, including grief counselors or crisis management personnel.

75.   The Madoff family was not contacted until hours later and upon their grief stricken arrival in Hawaii, BOLD EARTH did not send anyone to assist, greet, nor provide the family with any information.

76.   At all times herein mentioned, BOLD EARTH's owner and founder WALLIS never offered to assist the Madoff family in any manner.

77.   Upon information and belief, in the days following the catastrophic event, BOLD EARTH founder and owner WALLIS instructed PACK AND PADDLE owner MIMS to "stick to the script", that this was an unavoidable occurrence caused by a "rogue wave", and not to speak out publicly or to the Madoff family or their representatives regarding TYLER's death.

78.   At all times herein, BOLD EARTH forwarded a self serving release and advisory to their customers attempting to defend their actions with regard to the death of TYLER and instead blaming PACK AND PADDLE guides solely for the death.

79.   At all times herein, representatives from both BOLD EARTH and PACK AND PADDLE have implicated each other for the decision to take the group to the hazardous and off limits shoreline and tidal pools  where TYLER lost his life.

80.   At all times herein, a Hawai state investigation is currently ongoing, however, State of Hawaii officials have confirmed that the State of Hawaii issued

permit does not authorize walking to or landing at any location other than the Captain Cook Monument, and that the Napoopoo lighthouse and tide pool areas are outside of the areas allowed by permit.

81. TYLER is presumed dead and his body has not been recovered to date. Memorial services were held by his family on July 26, 2012, in New York.

COUNT I

GROSS NEGLIGENCE

82. Plaintiff repeats and re-alleges all prior allegations as if fully set forth herein.

83. The aforementioned acts and omissions of the Defendants herein demonstrated an indifference to, and a blatant violation of the Defendants' legal duties with respect to the rights of Plaintiff herein.

84. At all times herein mentioned, the Defendants engaged in willful and wanton conduct including but not limited to misrepresentations upon their websites regarding team leader and guide qualifications; the negligent hiring and retention of blatantly unqualified and inexperienced personnel; failing to perform background checks and searches; the flagrant disregard for the dangerous surf and high tide warnings on the date of the occurrence; the blatant disregard for permit and state park requirements; the complete and utter failure to exercise reasonable care and judgement, and instead the cavalier and reckless affirmative actions which led the group and its participants directly into the extreme danger of active tidal pools at a

dangerous and hazardous volcanic lava shoreline area; the creation of extremely hazardous and dangerous conditions all with known and foreseeable grave consequences; the failure to take life saving actions to save and protect TYLER, all constituting gross negligence which all caused and contributed to the catastrophic and avoidable death of TYLER and the infliction of injury and damages upon TYLER and his family.

85.   At all times herein mentioned, the Defendants' actions and omissions constitute gross negligence and a conscious and voluntary disregard of the need to use reasonable care which caused foreseeable grave injury and harm including death to TYLER and the infliction of injury and damages upon his family.

86.   As a result of the Defendants' grossly negligence conduct, compensatory and punitive damages are claimed herein.

COUNT II

NEGLIGENCE

87.   Plaintiff repeats and re-alleges all prior allegations as if fully set forth herein.

88.   At all times herein mentioned, the Defendants had a duty to provide for the safety of the members of their teen travel group and failed to properly and reasonably provide proper custodial support and supervision of the teenage group including Plaintiff TYLER.

-27-

89. At all times herein mentioned the Defendants failed to exercise reasonable care with regard to the safety of the tour and TYLER, as stated herein.

90. That Defendants BOLD EARTH, AMERICAN'S ADVENTURE, and WALLIS, and their agents, servants, and representatives were negligent, reckless, careless, and grossly negligent in their failures to properly provide proper and safe custodial supervision; in their misrepresentations regarding safety and supervision practices in their website and advertising materials; in the failure to protect the safety and well being of teenagers in their custody; in their negligent entrustment of the safety and well being of the group to young, inexperienced, and improperly trained team leaders; in misrepresenting and violating their own standards with regard to hiring and retention of team leaders; in the failure to properly hire, contract, retain, and screen subcontractor PACK AND PADDLE; in the failure to properly obtain, heed, respect, and follow dangerous surf and tide forecasts and advisories, in the total disregard of tidal and surf advisories; in the reckless, careless, and grossly negligent actions of instructing the group to abandon their kayaks and life jackets and travel to a dangerous area at the edge of the shore; in the failure to heed and follow State of Hawaii park and permit regulations and in disregard and contravention of same by leading the group to dangerous and hazardous off limits, off path, and off permit shoreline areas; in the negligent, reckless, and grossly negligent instruction for the BOLD EARTH tour group teenagers to enter the "fun zone", and swim and wade in dangerous shoreline tidal pools; in the failure to properly warn of dangerous and violent waves and rough seas; in the failure to exercise proper, prudent, and

reasonable judgment with regard to the safety of the teenagers in their custody; in the failure to take all reasonable and prudent measure to rescue and render assistance; and in the violation and derogation of local, regional, and state laws, rules, and regulations.

91.     That Defendant PACK AND PADDLE, and their agents, servants and representatives, were negligent, reckless, careless, and grossly negligent in their failures to properly provide proper and safe custodial supervision; in the failure to provide for the safety and well being of teenagers in their custody; in the failure to properly obtain, heed, respect, follow surf and tide forecasts and advisories, in the disregard of tidal and surf advisories; in failing to properly advise BOLD EARTH team leaders of the danger of deviating from the itinerary and permitted routes; in the failure to take all required actions to prevent the group from being placed in extreme danger; in the reckless, careless, and grossly negligent actions of instructing the group to abandon their kayaks and life jackets and travel to a dangerous area at the shoreline; in the failure to heed and follow Stare of Hawaii park and permit regulations and in the disregard and contravention of same by leading the group to dangerous and hazardous off limits shore line areas; in disobeying their State of Hawaii issued permit regarding the areas they were permitted to bring tour groups; in the reckless and grossly negligent escort to and instructing the children to enter the "fun zone" and swim and wade in dangerous shoreline tidal pools; in failure to properly warn of dangerous and violent waves; in the failure to take all reasonable

and prudent measure to rescue and render assistance; and in the derogation of local, regional, and state laws, rules, and regulations.

92.   That the Defendants' actions and omissions directly and proximately caused and contributed to TYLER's horrific and catastrophic injuries, damages, and death as stated herein.

## COUNT III

## WRONGFUL DEATH

93.   Plaintiff repeats and re-alleges all prior allegations as if fully set forth herein.

94.   As a result of the foregoing, the Defendants' actions and omissions directly and proximately caused and contributed to the death of TYLER.

95.   As a result of the foregoing TYLER left surviving next of kin and distributees.

96.   At all times herein mentioned, the parents of TYLER have been caused additional and further distress and emotional grief and have been deprived of closure as a result of the inability and failure to recover the remains of their son.

97.   As a consequence of the foregoing, the Madoff family, including Plaintiff MADOFF, have lost the love and affection of their son, TYLER, as set forth in Hawaii Revised Statutes § 663-3, Death by Wrongful Act.

98. As a consequence of the foregoing, the decedent's estate became liable for and expended money for the search for their son TYLER and memorial service of **TYLER**, and have incurred other expenses.

99. As a consequence of the foregoing wrongful death, the decedent's family has suffered, sustained, and incurred damages.

100. That the Defendants' actions and omissions directly and proximately caused and contributed to TYLER's injuries, damages, and death as stated herein and the loss of his future earnings pursuant to Hawaii Revised Statutes § 663-8.

<u>COUNT III</u>

<u>CONSCIOUS PAIN AND SUFFERING</u>

101. Plaintiff repeats and re-alleges all prior allegations as if fully set forth herein.

102. As a result of the foregoing, the Defendants' actions and omissions directly and proximately caused and contributed to TYLER's catastrophic death.

103. As a result of the foregoing, Plaintiff decedent prior to his death, TYLER was caused, permitted, and allowed to be struck by waves, catapulted against the tidal lava rock formations, and subsequently and violently dragged out to the ocean when brought to the dangerous area at the Napoopoo lighthouse.

104. At all times herein mentioned, upon information and belief TYLER was caused to suffer and sustain significant pre-death terrors, fear of death, physical

injuries, suffocation, drowning, and conscious pain and suffering, all leading to his catastrophic and untimely death.

105. As a consequence of the foregoing, the deceased TYLER has suffered, sustained, and incurred damages recoverable under Hawaii Revised Statutes §§ 663-3; 663-7, and 663-8, and any other applicable law.

## COUNT IV

## FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

106. Plaintiff repeats and re-alleges all prior allegations as if fully set forth herein.

107. That as a result of the said Defendants' reckless, careless, and grossly negligent conduct, TYLER's parents and family, including Plaintiff MADOFF, have been caused to be grief stricken and to suffer severe and extreme ongoing emotional distress.

108. That, solely as a result the foregoing, Plaintiff's family and Plaintiff MADOFF not knowing where the remains of TYLER are, and their inability to afford him a proper and respectable burial has caused them to suffer unbearable pain and suffering and emotional distress that no parent should ever be forced to suffer and endure.

109. That, solely as a result of the foregoing, the family's suffering and pain continues every day.

110.  As a result of the foregoing, Defendants have directly and proximately caused and contributed to Plaintiff MADOFF's damages and injuries as stated herein and is therefore liable for such injuries and damages.

## COUNT V

## NEGLIGENT HIRING, SUPERVISION, RETENTION, AND TRAINING

111.  Plaintiff repeats and re-alleges all prior allegations as if fully set forth herein.

112. Upon information and belief, at all times mentioned herein, the Defendant individuals and the corporate entities, had an obligation and duty to hire, retain, instruct, train, and supervise servants and employees to competently perform services.

113.   Upon information and belief, at all times mentioned herein, said Defendants breached this duty by negligently, carelessly, and recklessly hiring, retaining, instructing, and supervising their servants and employees, who were not properly qualified, experienced, nor possessed of an adequate and reasonable level of judgement to be team leaders and guides and/or to have authority and responsibility for the safety and well-being over the young teen youth group herein.

114.  That said agents, servants, and employees, including but not limited to MORK, KELSEY, OLA, and LETITIA, were not properly trained, qualified, nor experienced to be in authority and responsible for the safety and well being of the teen tour group including, but not limited to, TYLER.

-33-

115.  Upon information and belief, Defendants MORK, KELSEY, OLA, and LETITIA were not experienced nor properly trained in group leadership and responsibility; not certified or qualified in risk management, safety instruction, life guarding, risk prevention, and crisis and emergency management; and were not the subject of proper background and qualification checks.

116.  Upon information and belief, Defendants MORK, KELSEY, OLA, and LETITIA failed to exercise proper and reasonable judgement; cavalierly disregarded surf and tide advisories; and failed to utilize available information to make reasonable decisions regarding safety of the teenagers they were charged to protect.

117.  That Defendants failed to properly promulgate and enforce rules, regulations, and guidelines with regard to safety and supervision, compliance with applicable rules, regulations, and permit requirements, hazard avoidance, emergency management, rescue, and crisis management.

118.  That at all times herein mentioned Defendants failed to properly perform screening and background checks of their agents, servants, and employees and misrepresented the requirements and performance of same.

119.  At all times herein mentioned, Defendant BOLD EARTH represents upon it's website that:

> "All trips include one male and one female trip leader who are at least 21 years old. And that "Our hiring process is competitive, resulting in what we believe to be the most professional, safe and experienced leaders in the industry. <u>We conduct an in-depth interview, check references and do a background check of all potential trip leaders</u> (emphasis added). Organizational skills, sense of

humor, safety and an ability to teach teenagers about leadership and adventure travel, are the qualities we value most."

120.   At all times herein, BOLD EARTH further states that its teen adventure trip leaders "**will oversee and be responsible for campers at all times**".

121.   At all times herein mentioned BOLD EARTH's team leader requirements also delineate:

- A maximum of one moving violation on driving record for past three years.

- Previous work experience and responsibility with teenagers.

- Ability to work effectively and responsibly in a team situation.

- Patience enthusiasm, safety consciousness, organizational skills and flexibility.

- Possess proven decision making skills.

122.   At all times herein, the BOLD EARTH team leaders assigned to the "Hawaiian Adventure" were KELSEY, and twenty-two year old  MORK.

123.   At all times herein mentioned and upon information and belief, in complete derogation of BOLD EARTH's own self proclaimed rigorous supervision screening standards, team leader MORK had a questionable history and record reflecting disorderly conduct, possession of marijuana, and multiple traffic offenses.

124.   At all times, BOLD EARTH violated their own rules and regulations with regard to proper interviewing and screening of their team leaders.

125.  As a result of the foregoing, Defendants have directly and proximately caused and contributed to the catastrophic injuries and death of TYLER and Plaintiff MADOFF's injuries as stated herein and are, therefore, liable for such injuries and damages.

## COUNT VI

## NEGLIGENT MISREPRESENTATION

126.  Plaintiff repeats and re-alleges all prior allegations as if fully set forth herein.

127.  That, at all times mentioned herein, the Defendants negligently misrepresented the services and the qualifications of the companies they retain within their brochure and internet sites.

128.  At all times herein mentioned, Defendant BOLD EARTH further boasts upon its website to parents that their goal is to deliver an experience in leadership, independence, and challenge "which meets or exceeds your expectations for safety and growth, and further boasted of "professional and top notch guardianship" (emphasis added).

129.  That the BOLD EARTH and AMERICA'S ADVENTURE website specifically referenced the priority to be afforded safety and the heightened criteria and background searches to be utilized in the selection of team leaders for custody and supervision of the teenagers.

130. That, at all times mentioned herein, the defendants advertised to the general public, and specifically represented to plaintiff that their children would be safely and properly supervised and cared for and would not be placed in danger.

131. That upon information and belief the Defendants BOLD EARTH and AMERICA'S ADVENTURE misrepresented its services and the qualifications of the companies they contracted with as well as the qualifications of the team leaders employed by same.

132. That at all times herein mentioned, Plaintiff MADOFF relied upon the Defendants' representations to his significant detriment.

133. That Plaintiff MADOFF was a foreseeable customer for the Defendants' services, and Plaintiff MADOFF's reliance upon the Defendants' representations were or should have been contemplated by said Defendants in agreeing to have TYLER join the tour.

134. As a result of the foregoing, Defendants have directly and proximately caused and contributed to the catastrophic injuries and death of TYLER and Plaintiff MADOFF's injuries as stated herein and is therefore liable for such injuries and damages.

WHEREFORE, upon a hearing hereof, Plaintiff MADOFF prays that judgement be entered as follows:

A.      For all damages to which Plaintiff MADOFF is entitled, including special damages, and other damages to be proven at trial;

-37-

B.    For all damages awardable under Hawaii Revised Statutes § 663-3, 663-4, 663-7, and 663-8; and other applicable law for the wrongful death of TYLER to be proven at trial;

C.    For punitive damages as a result of the wanton reckless and gross negligence of the Defendants;

D.    For post judgment and prejudgment interest at the maximum rate permitted by law;

E.    For attorney's fees and costs; and

F.    For such other and further relief as this Court deems just and equitable.

DATED: Honolulu, Hawaii, _____August 21_____2012.

                  CHARLES H. BROWER
                  Attorney for Plaintiff
                  Michael Madoff, Individually and as
                  Administrator of the Estate of
                  Tyler Madoff, Deceased

                  SUSAN M. KARTEN
                  (Application for Pro Hac Vice Pending)