IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MICHAEL MADOFF, Individually and as Administrator of the Estate of TYLER MADOFF, Deceased,<br><br>              Plaintiff,<br><br>        vs.<br><br>BOLD EARTH TEEN ADVENTURES, AMERICA'S ADVENTURE, INC., ABBOTT WALLIS, ANDREW MORK, KELSEY TYLER, HAWAII PACK AND PADDLE LLC, BARRY MIMS, NOLAN KEOLA A. REED, and LETITIA MIMS,<br><br>              Defendants. | CIVIL NO. 12-00470 SOM/RLP<br><br>ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS |

**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS**

I.        **INTRODUCTION.**

On July 4, 2012, fifteen-year-old Tyler Madoff was swept out to sea near Kealakekua Bay during a kayaking and hiking adventure tour operated by Defendant Bold Earth Teen Adventures, America's Adventure, Inc.  Tyler's body has not been recovered, and he is presumed dead.

Plaintiff Michael Madoff, for himself and as the Administrator of Tyler's estate, now brings this action against Bold Earth, its President and founder, Abbott Wallis, Bold Earth

employees Andrew Mork and Kelsey Martin,[1] Hawaii Pack and Paddle
LLC ("Pack and Paddle"), Pack and Paddle owner Bari Mims,[2] and
Pack and Paddle employees Nolan Keola Reed and Letisha Mims[3]
(collectively, "Defendants").  Madoff argues that Defendants'
allegedly negligent acts caused Tyler's death.

      Bold Earth's release forms contain a forum selection
clause stating that "any suit or other proceeding must be filed
or entered into only in Jefferson County, Colorado."  Based on
this provision, Defendants Bold Earth, Wallis, Martin, and Mork
move to dismiss this action for improper venue, pursuant to Rule
12(b)(3) of the Federal Rules of Civil Procedure.  <u>See</u> ECF No.
21.  Defendants Pack and Paddle, Bari Mims, Letisha Mims, and
Reed also move separately to dismiss on the same grounds.  <u>See</u>
ECF No. 22.  The court DENIES Defendants' motions to dismiss, ECF
No. 21 and ECF No. 22.

II.       **BACKGROUND FACTS.**

      Bold Earth is a Colorado corporation that offers
adventure trips for teenagers in various locations around the

---

[1] The Complaint refers to Defendant "Kelsey Tyler," but
Defendants' Motion to Dismiss states that her name is "Kelsey
Martin."

[2] The Complaint refers to Defendant "Barry Mims," but
Defendants' Motion to Dismiss states that "Bari Mims" is the
correct spelling of his name.

[3] The Complaint refers to Defendant "Letitia Mims" but
Defendants' Motion to Dismiss states that "Letisha Mims" is the
correct spelling of her name.

world.  See Exhibit "B" attached to ECF No. 21.  Tyler
participated in Bold Earth's twenty-one-day "Ultimate Hawaii"
trip held in July 2012 (the "Trip") along with eleven other
students.  Id.  The Trip included activities such as surfing,
kayaking, backpacking, and biking on the Big Island of Hawaii.
See Exhibit "3" attached to ECF No. 56.

Bold Earth employed Mork and Martin to accompany the
Trip participants as "team leaders."  ECF No. 1 ("Compl.") at 4.
Bold Earth also hired Pack and Paddle to supply kayaks and local
guides for the kayaking portion of the Trip.  Id.  Pack and
Paddle employees Reed and Letisha Mims led that portion of the
Trip, accompanied by Mork and Martin.  Id. at 6.

On July 4, 2012, Tyler and the other Trip participants
planned to spend the day kayaking near Kealakekua Bay.  See
Exhibit "3" attached to ECF No. 56; Compl. at 6.  After the
kayaking activity, the tour group leaders took the group on an
allegedly unscheduled hike to a scenic tide pool area.  Compl. at
6-7.  Allegedly, neither Bold Earth nor Pack and Paddle held a
proper State of Hawaii permit authorizing the taking of groups to
this area.  Id. at 6.  While visiting the tide pools, the group
was struck by large surf that swept Tyler and another male Trip
participant into the ocean.  Id. at 8.  A local fishing vessel
picked up the other teenager from the water, and he was

ultimately resuscitated.  Id. at 9.  Tyler, however, was never found despite prolonged search efforts.  Id. at 10.

Before the Trip, Tyler's mother, Marianne Madoff, who is not a party to this lawsuit, appears to have signed a hard copy version of Bold Earth's Parent Agreement, dated March 26, 2012.  See Exhibit "D" attached to ECF No. 22.  The Parent Agreement contains a provision stating, "I agree that Colorado substantive law will govern this Agreement and all other aspects of my and my child's relationship with Bold Earth and that any suit or proceeding must be filed or entered into only in Jefferson County, Colorado."  Id.

Defendants also allege that, on January 31, 2012, at least one of Tyler's parents signed an online version of Bold Earth's Liability Agreement.  The Liability Agreement covers Pack and Paddle, stating, "[W]e understand and agree that [Bold Earth] contracts with, and that this Release is intended to protect and include as additional released parties the following companies: . . . Hawaii Pack and Paddle . . . ."  Exhibit "C" attached to ECF No. 22.  The forum selection clause contained in the Liability Agreement states, "We understand and agree that Colorado substantive laws will govern this Application and Release, any dispute we have with [Bold Earth], and all other aspects of our relationship with [Bold Earth], and that any suit or other proceeding must be filed or entered into only in Jefferson

County, Colorado." Id.  The Liability Agreement also states, "We agree that this Release is binding on us, our family members, heirs, executors, representatives, subrogors and estate." Id.

Michael Madoff's Complaint, filed in this court, alleges that Defendants negligently led the Trip participants into the dangerous tide pool area despite high surf forecasts, and despite State of Hawaii permitting restrictions, and that Tyler died as a result.

Defendants now move to dismiss for improper venue, arguing that the forum selection clauses in the Bold Earth agreements require Madoff to litigate in Jefferson County, Colorado.  Because the language in the two agreements does not differ in any manner material to the present motions, this order sometimes refers to the "forum selection clause" in the singular. Madoff argues, among other things, that the forum selection clause is unreasonable, and therefore unenforceable, because as many as forty-three Hawaii-based witnesses would be beyond the compulsory subpoena authority of the Jefferson County court.[4] See ECF No. 56 at 33.  Defendants Wallis, Mork, and Martin apparently reside in Colorado, Wisconsin, and Illinois,

---

[4] This court is only considering Madoff's Second Amended Memorandum in Opposition, ECF No. 56.  Because the Amended Memorandum in Opposition, ECF No. 50, which amended the original Memorandum in Opposition, ECF. No. 42, exceeded the word limit in Local Rule 7.5(b), the court struck the Amended Memorandum in Opposition.

respectively.  <u>See</u> Exhibit "24" attached to ECF No. 56.  Of the eleven other Trip participants, six currently reside in New York, and the remaining five currently reside in Colorado, Florida, Pennsylvania, Connecticut, and California.  <u>See</u> Exhibit "23" attached to ECF No. 56.

In his affidavit, Michael Madoff states, "If this case were to be moved to Colorado, it would create an insurmountable burden upon myself and our family, and our ability to access and present all witnesses and evidence regarding the circumstances surrounding my son's death would be impossible."  <u>See</u> Exhibit "1" attached to ECF No. 56.

III.    **STANDARD**.

Rule 12(b)(3) of the Federal Rules of Civil Procedure governs motions to dismiss for improper venue.

In "resolving motions to dismiss based on a forum selection clause, the pleadings are not accepted as true, as would be required under a Rule 12(b)(6) analysis . . . . Analysis under Rule 12(b)(3) . . . permits the district court to consider facts outside of the pleadings[.]"  <u>Arqueta v. Banco Mexicano, S.A.</u>, 87 F.3d 320, 324 (9th Cir. 1996).  In the context of a Rule 12(b)(3) motion based on a forum selection clause, the trial court must draw all reasonable inferences in favor of the nonmoving party and resolve genuine factual conflicts in favor of the nonmoving party.  <u>See</u> <u>Murphy v. Schneider Nat'l, Inc.</u>, 362

F.3d 1133, 1138 (9th Cir. 2004) ("a party seeking to avoid enforcement of a forum selection clause is entitled to have the facts viewed in the light most favorable to it, and no disputed fact should be resolved against that party until it has had an opportunity to be heard").

When genuine issues of material fact are raised, the district court may hold an evidentiary hearing on the disputed facts.  Id.  "Whether to hold a hearing on disputed facts and the scope and method of the hearing is within the sound discretion of the district court."  Id.  Upon holding a hearing, "the district court may weigh evidence, assess credibility, and make findings of fact that are dispositive on the Rule 12(b)(3) motion.  These factual findings, when based upon an evidentiary hearing and findings on disputed material issues, will be entitled to deference."  Id. at 1140.  "Alternatively, the district court may deny the Rule 12(b)(3) motion while granting leave to refile it if further development of the record eliminates any genuine factual issue."  Id. at 1139.

If the court determines that venue is improper, it may dismiss the case, or, if the interests of justice require, the court may transfer the case to any district in which it properly could have been brought.  28 U.S.C. § 1406(a); Dist. No. 1, Pac. Coast Dist., M.E.B.A. v. Alaska, 682 F.2d 797, 799 (9th Cir. 1982).  The decision to transfer rests in the court's discretion.

28 U.S.C. § 1404(b); <u>King v. Russell</u>, 963 F.2d 1301, 1304 (9th Cir. 1992).

IV.        **ANALYSIS.**

Madoff argues that the forum selection clause is not enforceable for various reasons.  This court disagrees with most of Madoff's arguments, but does agree that, under the narrow circumstances of this case, the forum selection clause is not enforceable because it will effectively deprive Madoff of a meaningful day in court.

> A.    **The Parent Agreement and Liability Agreement Are Not Rendered Unenforceable Against Michael Madoff Just Because Marianne Madoff, a Nonparty, May Have Signed Them.**

Madoff argues that he is not bound by the Parent Agreement or the Liability Agreement because these agreements were allegedly executed only by Marianne Madoff, Tyler's mother, who is not a party to this action.  The court is not persuaded that this circumstance makes the forum selection clauses unenforceable against Tyler's father.

The Ninth Circuit has noted that, "[i]n order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound."  <u>Manetti-Farrow, Inc. v. Gucci Am., Inc.</u>, 858 F.2d 509, 514 n.5 (9th Cir. 1988); <u>see also</u> <u>id.</u> ("a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses").  As the

Eleventh Circuit notes, spouses are so "closely related" that
they bind each other to forum selection clauses.  See Lipcon v.
Underwriters at Lloyd's, London, 148 F.3d 1285, 1299 (11th Cir.
1998).  In keeping with the reasoning of the Ninth and Eleventh
Circuits, this court concludes that Michael Madoff is bound by
the forum selection clauses contained in the Parent Agreement and
Liability Agreement, even if only Marianne Madoff signed those
documents.

        Madoff also argues that the Liability Agreement is void
with respect to claims of gross negligence, voidable given the
lack of informed consent, and disfavored as applied to minors.
These arguments appear to relate to the effectiveness of clauses
that attempt to shield a party from liability rather than to the
issue of where suit may be brought.  Liability issues are not
before the court on the present motions and will not be decided
at this time.

### B.    The Forum Selection Clause is Mandatory.

        Madoff argues that the forum selection clause fails to
render Jefferson County, Colorado, the exclusive jurisdiction in
which suit may be filed, and that enforcement of the clause is
therefore precluded.  The court disagrees.

        The Ninth Circuit has distinguished between forum
selection clauses that are mandatory, and those that are
permissive.  See Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817

F.2d 75, 77 (9th Cir. 1987).  A mandatory clause is one that clearly provides for exclusive jurisdiction.  Id.  For example, in Pelleport Investors, Inc. v. Budco Quality Theatres, Inc., 741 F.2d 273, 275 (9th Cir. 1984), the mandatory forum selection clause stated that "this Agreement shall be litigated only in the Superior Court for Los Angeles (and in no other)."  In contrast, a permissive clause does not provide that any jurisdiction is the exclusive forum for a lawsuit.  For example, in Hunt Wesson, the permissive forum selection clause stated, "The courts of California . . . shall have jurisdiction over the parties in any action at law relating to the subject matter or the interpretation of this contract."  817 F.2d at 76.  Because the language "clearly [fell] short of designating an exclusive forum" and allowed cases to be filed in other jurisdictions, the Ninth Circuit ruled that the clause was permissive.  Id. at 78.  In other words, because the forum selection clause merely provided that California courts had jurisdiction over any dispute, it did not preclude other courts from also exercising jurisdiction over any dispute.

The forum selection clauses contained in the Parent Agreement and the Liability Agreement state that "any suit or other proceeding must be filed or entered into only in Jefferson County, Colorado."  This language clearly designates Jefferson

10

County, Colorado, as the exclusive forum.  This forum selection clause is mandatory, not permissive.

### C. The Court Analyzes the Validity of the Forum Selection Clause Under <u>M/S Bremen</u>.

Federal law governs the validity of a forum selection clause in diversity cases.  <u>See</u> <u>Manetti-Farrow</u>, 858 F.2d at 513 ("because enforcement of a forum clause necessarily entails interpretation of the clause before it can be enforced, federal law also applies to interpretation of forum selection clauses"). A forum selection clause is presumptively valid and should be enforced unless the resisting party shows that enforcement is "unreasonable" under the circumstances.  <u>See</u> <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 10 (1972); <u>accord</u> <u>Pelleport</u>, 741 F.2d at 279 ("Although <u>The Bremen</u> involved an international forum selection question . . . we see no reason why the principles announced in <u>The Bremen</u> are not equally applicable to the domestic context.  Courts addressing the issue uniformly apply <u>The Bremen</u> to cases involving domestic forum selection questions.").

A forum selection clause is unreasonable if (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power, (2) the selected forum is so gravely difficult and inconvenient that the resisting party will be effectively deprived of a meaningful day in court, or (3) enforcement of the clause would contravene a strong public

policy of the forum in which the suit is brought.  M/S Bremen,
407 U.S. at 12-13, 18; accord Argueta, 87 F.3d at 325.  To
establish the unreasonableness of a forum selection clause under
the second test, the party resisting enforcement of the clause
has the "heavy burden of showing that trial in the chosen forum
would be so difficult and inconvenient that the party would
effectively be denied a meaningful day in court."  Pelleport, 741
F.2d at 281.  Forum selection clauses contained in form contracts
are also "subject to judicial scrutiny for fundamental fairness."
Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991).

> **1.    The Nonnegotiated Nature of the Forum
> Selection Clause Does Not Render it
> Unreasonable.**

        Madoff argues that the forum selection clause is
unreasonable under the first M/S Bremen exception (incorporation
into a contract as a result of fraud, undue influence, or
overweening bargaining power) because it was not subject to
negotiation.  The Supreme Court addressed this issue in Shute,
holding that a forum selection clause is not per se unreasonable
merely because it was not freely negotiated.  499 U.S. at 593.

        Shute involved a forum selection clause printed on a
cruise ship ticket that required passengers to litigate in
Florida.  The Shutes had purchased their cruise tickets through a
State of Washington travel agency, boarded the cruise ship in
California, and sailed to Mexico.  Id. at 587-88.  While the ship

was in international waters off the coast of Mexico, Mrs. Shute slipped and fell, injuring herself.  Id. at 588.  The Shutes filed suit against Carnival Cruise in the United States District Court for the Western District of Washington.  Id.

Carnival Cruise moved for summary judgment on the ground that the forum selection clause printed on the Shutes' tickets required them to litigate in a Florida court.  Id.  The Washington district court granted the motion, holding that Carnival Cruise lacked sufficient in-state contacts to support the exercise of personal jurisdiction over it.  Id.  The Ninth Circuit reversed, finding the contacts sufficient, and ruling that, under M/S Bremen, the forum selection clause printed on the Shutes' ticket was unenforceable because it had not been freely bargained for.  Id. at 589.  Pointing to evidence in the record that the Shutes were physically and financially incapable of pursuing litigation in Florida, the Ninth Circuit determined that enforcement of the forum selection clause would effectively deprive the Shutes of their day in court under M/S Bremen.  Id.

The Supreme Court reversed.  It began by stating that "we do not adopt the Court of Appeals' determination that a non-negotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining."  Id. at 593.  The Court noted that a nonnegotiated forum selection clause might be reasonable given the cruise line's interest in limiting fora, the confusion and expense saved

13

by naming a forum, and the possible consumer benefit of reduced fares reflecting the cost-savings associated with a forum limitation. Id. at 593-94.  The Court also rejected the Ninth Circuit's "independent" and "conclusory" finding that the Shutes were physically and financially incapable of litigating in Florida, a finding the district court had not made. Id. at 594. The Court concluded that the Shutes had not met their heavy burden of showing severe inconvenience for purposes of M/S Bremen. Id. at 595.

The Ninth Circuit thereafter recognized that, under Shute, unequal bargaining power in a nonnegotiated contract does not, by itself, overcome the presumption of validity of a forum selection clause.  See Murphy, 362 F.3d at 1141 ("a differential in power or education on a non-negotiated contract will not vitiate a forum selection clause"); accord Holck v. Bank of N.Y. Mellon Corp., 769 F. Supp. 2d 1240 (D. Haw. 2011) (Ezra, J.). Madoff argues that, given the parties' allegedly unequal bargaining power and the absence of negotiation, the forum selection clause in the present case is invalid.  This is an untenable argument under controlling law.  Those circumstances, without more, are insufficient to render the clause unreasonable.

>          **2.   Under the Exceptional Circumstances of this
>                Case, the Forum Selection Clause Is
>                Unreasonable Because, on the Present Record,
>                its Enforcement Will Effectively Deprive the
>                Madoffs of a Meaningful Day in Court.**

Madoff argues that he will be deprived of a meaningful day in court if forced to litigate in Colorado, because a substantial number of key witnesses will be beyond the reach of compulsory subpoena authority.  Drawing all reasonable inferences in favor of Madoff, the court agrees that he will effectively be deprived of a meaningful day in court.

The term "deprivation of a meaningful day in court" is not precisely defined in controlling cases.  However, the Ninth Circuit provides guidance in saying that a deprivation occurs when a complaining party is physically and financially unable to litigate in the forum designated by contract.  See Murphy, 362 F.3d at 1142.  Plaintiff Murphy, who lived in Oregon, was a long haul trucker employed by Schneider.  Murphy was injured on premises in Lexington, Kentucky, that were owned by Trane.  Id. at 1136.  Murphy filed a personal injury action against both Trane and Schneider in the United States District Court for the District of Oregon, based on diversity of citizenship.  Id. Schneider moved to dismiss based on Murphy's employment contract, which contained a forum selection clause stating that "all suits with respect hereto shall be instituted exclusively in the Circuit Court of Brown County, Wisconsin."  Id.  Trane filed its

own motion to dismiss based on <u>forum non conveniens</u> if the forum

selection clause was enforced.

Murphy presented evidence that he would be unable to

litigate his claim if the forum selection clause was enforced:

> Since my accident I have been unable to work.
> Because I was unable to work, I earned no
> income, and the truck that I used to earn my
> livelihood was repossessed.  I presently live
> on my disability payments, which amount to
> approximately $2,000.00 per month.  I am 61
> years old.  My wife, who is 61 years of age,
> is also disabled and cannot work.  She
> receives approximately $234.00 per month in
> disability payments.  Each month we use all
> of our combined disability payments to pay
> outstanding bills.  We also put an average of
> $200 [to] $300 per month on credit cards, on
> which we are making minimum payments.  We
> have no disposable income . . . .  I could
> not afford to maintain this case if it were
> in a Wisconsin court.

<u>Id.</u> at 1142.  Despite his affidavit, the district court granted

the defendants' motions to dismiss.  <u>Id.</u>

The Ninth Circuit vacated and remanded, stating,

"Taking Murphy's allegations as true and resolving all disputed

facts in his favor, . . . Murphy's physical and financial

limitations together would preclude his day in court, and the

second <u>M/S Bremen</u> exception to enforcing forum selection clauses

would apply."  <u>Id.</u> at 1143.

In contrast, the "deprivation of a meaningful day in

court" standard was not met in <u>Pelleport</u>, when the complaining

party alleged that some witnesses would be inconvenienced if

16

forced to travel to the specified forum.  741 F.2d at 281.

Pelleport involved a contractual dispute between a California

motion picture supplier and a Pennsylvania corporation that

licensed films from it.  Id. at 275.  The defendant argued that

the forum selection clause limiting jurisdiction to the Superior

Court for Los Angeles, California, was unreasonable.  Id. at 281.

The Ninth Circuit disagreed, noting that the defendant was

alleging "that some of the witnesses will be inconvenienced if

forced to travel to California for trial and that the contracts

were performed outside of California."  Id. at 281.  Deeming

those circumstances insufficient to deprive the defendant of a

meaningful day in court under M/S Bremen, the Ninth Circuit

affirmed the district court's enforcement of the forum selection

clause.  Id.

Although Madoff's concern about the effect of a

Colorado trial on Hawaii witnesses might seem, at first blush,

akin to the rejected argument in Pelleport, Madoff presents a

much more compelling case for overriding the forum selection

clause.  Madoff has so far identified forty-three Hawaii-based

witnesses relevant to proving Defendants' liability.[5]  See ECF

No. 56 at 33.  These witnesses include Hawaii first responders,

---

[5] In Pelleport, the plaintiff sought to enforce the forum selection clause to retain the suit in its preferred forum, while here, it is Defendants who seek to enforce the forum selection clause they drafted and to take the action out of Plaintiff's chosen forum.

Hawaii search and rescue personnel, Hawaii government permitting officials, and other hiking and kayaking tour operators in Hawaii.  Id.  This raises several issues relevant to the court's analysis.

> ### a.   Colorado Proceedings Would Deprive Madoff of the Ability to Present an Effective Liability Case.

This court is concerned that enforcing the forum selection clause would leave Madoff without any guarantee that he could present his liability case in an effective manner. Possibly, some Hawaii witnesses might agree to travel to Colorado for trial, but if those witnesses changed their minds or ran into conflicting work or family obligations, Madoff would have no means of compelling their attendance at trial in Colorado.  That is because a Colorado court's civil subpoena power does not extend to Hawai.  Madoff would instead be relegated to presenting almost his entire liability case through depositions or by video.

Not only are depositions far less likely to engage a jury than live testimony, depositions are subject to a number of other disadvantages.

First, courts often limit the number of depositions that a party may take.  For example, Rule 30 of the Federal Rules of Civil Procedure states that a party must obtain leave of court to take more than ten depositions.  If this case were filed in Colorado state court in Jefferson County, it would be governed by

Rule 30 of the Colorado Rules of Civil Procedure, which states that a party must obtain leave of court to take more than the number of depositions set forth in a Case Management Order. Madoff's present plan to obtain testimony from forty-three Hawaii witnesses, augmented by testimony from numerous others who reside in neither Hawaii nor Colorado, could be hampered by a restriction on his ability to conduct discovery or present all relevant testimony at trial.

Second, although some Defendants stated at the hearing on the present motions that they will not object to depositions based on their number, even an unlimited number of depositions would not cure Madoff's grave difficulty in presenting his case. As Defendants concede, absent willingness on the part of witnesses to travel to Colorado, Madoff's only live in-person liability witnesses at a Colorado trial would be Defendants themselves.  At the hearing, Defendants stated that the Trip participant that lives in Colorado would also be physically available at trial as a liability witness.  The court notes, however, that this Trip participant was not named as a possible witness in Madoff's pretrial motion briefs.

Thus, quite apart from the disadvantage of having to present all liability evidence through some combination of the reading of deposition transcripts, the showing of videotaped depositions, or, possibly, witnesses appearing by live video

19

feed, Madoff would be faced with having the only in-person "stars" of his liability case be his opponents!  These circumstances would impair the effectiveness of any presentation, no matter how dazzling counsel might be.

The court assumes that a Colorado trial would take advantage of all the "bells and whistles" that technology makes available to advocates today.  But this court is far from alone in recognizing that technology is not yet able to replicate a person's physical presence.

A videotaped deposition allows the jury, to some extent, to observe the candor and demeanor of the witness, but it remains inferior to live testimony.  See United States v. Wilson, 601 F.2d 95, 97 (3d Cir. 1979) ("Attendance of witnesses at trial . . . is the favored method of presenting testimony . . . . The antipathy to depositions is due in large part to the desirability of having the factfinder observe witness demeanor.  Although this concern has been alleviated to a marked degree by the advent of modern audio-visual technology, the policy in favor of having the witness personally present persists.").

Third, under Rule 16(f)(3)(D) of the Colorado Rules of Civil Procedure, a party seeking to present deposition testimony "shall provide the other parties with its designations of such testimony at least 28 days before the trial date."  This time allows for counterdesignations by Defendants and court rulings on

objections (pity the judge faced with ruling on designations from forty-three depositions).  But it means that, if Madoff's testimonial evidence on liability ends up consisting almost entirely of preserved depositions, Madoff will have had to have disclosed not just his liability theories, but his entire liability case verbatim a month before trial.  The former is routine, and the natural consequence of civil discovery.  The latter is far from routine or natural.

Fourth, preserved testimony would severely limit Madoff's ability to present rebuttal testimony at trial following the close of Defendants' case.  Even if Madoff could accurately anticipate Defendants' case in chief, it would be difficult indeed for him to effectively rebut a live defense case with more deposition testimony.[6]

Fifth, Madoff's difficulties would not be overcome by "live" video conferencing.  That is, Madoff might be able to present trial witnesses who, while remotely located in Hawaii, were testifying "live" via video, thus allowing the jurors to

---

[6] There may also be significant cost considerations associated with recording and editing videotaped deposition testimony.  Michael Madoff's affidavit states that a Colorado trial "would create an insurmountable burden upon myself and our family".  See Exhibit "1" attached to ECF No. 56.  Because Madoff does not explain whether this "insurmountable burden" includes financial hardship, this court does not here rely on cost considerations, although conducting both discovery depositions and preservation video depositions of each out-of-state witness will surely be costly.

view interaction with the witness as it occurred.  This presentation in real time is clearly better than a videotaped deposition, but, barring cost and scheduling concerns, no attorney would choose this over having a witness in person in the courtroom with the jurors.  That is because, as this court has already noted, nothing is as effective as physical presence. Madoff must plan for this turning out to be his best option. Having to present an entire liability case in this manner would not only be difficult, it would be severely prejudicial.

No plaintiff would desire a trial in which the only liability witnesses appearing in person were the defendants.  The inability to procure attendance in person of dozens of witnesses is a severe handicap to Madoff, as a jury's attention to preserved testimony (or even live video testimony) is unlikely to match its attention to live testimony.  Madoff will have the burden of proof at trial, and it would be tremendously difficult for him to meet this burden solely through preserved testimony that is read or live testimony on a screen.

Additionally, even a trial at which all or most of the plaintiff's witnesses appeared via live video testimony from Hawaii would present considerable difficulties.  If the attorneys were in a courtroom in Colorado questioning witnesses in Hawaii via video, their interaction with witnesses would be curtailed. Physical presence is not only optimal vis à vis a witness's

22

impact on jurors, but also vis à vis an attorney's impact on a witness.  Moreover, the questioning attorney would lose the ability to meet in person with a witness immediately before the witness testified.  Of course, the attorneys could choose to be in Hawaii to examine witnesses in Hawaii, or some attorneys could be in Colorado, some in Hawaii.  Even in that event, some attorneys would give up their in person impact with the jury in Colorado.

These are extraordinary circumstances.  Drawing all reasonable inferences in favor of the nonmoving party, including the risk of not having any in person liability witness other than Defendants, the court determines that, if forced to litigate in Jefferson County, Colorado, Madoff would be deprived of a meaningful day in court.  That is not to say that, if presented with a different record, the court would reach the same conclusion.  If the parties later determine that circumstances have materially changed, Defendants may renew their motion to enforce the forum selection clause.

This court recognizes that the Eighth Circuit, in Sun World Lines, Ltd. v. March Shipping Corp., 801 F.2d 1066 (8th Cir. 1986), upheld a forum selection clause under analogous circumstances.  That was a breach of contract case between a resident citizen of the Federal Republic of Germany, who owned and operated a shipping company, and two American companies.  The

contract was prepared by the German shipping company owner and included a forum selection clause that had not been the subject of negotiation.  It provided for disputes to be submitted "to the competent court of the Federal Republic of Germany."  Id. at 1067.  A dispute arose, and the American companies filed suit in federal court in Missouri.  The Eighth Circuit affirmed the district court's decision to dismiss the case based on the forum selection clause.  The American company had argued that their witnesses were "all in the United States," including the president of one of the companies, who was in a federal penitentiary.

The Eighth Circuit said, "While we recognize the hardship of litigating this suit in Germany, we agree with the district court that the alternative of using depositions of key witnesses provides adequate opportunity" for the American companies.  Id. at 1068.

While the reference to "all" of the American companies' witnesses and to a forum in a foreign country might make Sun World appear even more egregious than the present case, it is not at all clear that that is indeed so.  First, this court cannot tell how many witnesses were involved in the case.  The fewer the number, the shorter the trial might have been.  In any trial, jurors are likelier to be more attentive throughout a short trial than throughout a lengthy trial, and when witnesses are appearing

on screens, loss of attentiveness becomes an even greater concern.  Second, there is no indication as to whether some of the witnesses were employees or agents of the American companies. If some witnesses were controllable by the American companies, that was a mitigating factor not available to Madoff, because such witnesses would likelier have appeared in Germany.  Third, if the incarcerated president of one of the American companies was going to testify, his testimony may well have had to be by deposition designations regardless of where the trial was held. Finally, there is no contention that the only in-person witnesses the companies could count on with respect to the liability issue would be their opponents.  In short, the circumstances Madoff faces may, in fact, present him with greater difficulties than existed in Sun World.

> **b.   Witnesses Could Be Required to Appear in Person at a Hawaii Trial.**

At the hearing on the present motions, Defendants argued that the absence of "in-person witnesses" in a Colorado trial would not be cured by allowing trial in Hawaii.  Noting that the Hawaii witnesses lived on the Big Island, more than 100 miles from this court, Defendants contended that Hawaii witnesses could not be subpoenaed to attend trial even if trial occurred in this court, located in Honolulu.  Defendants are mistaken.

Under Rule 45(c)(3)(A)(ii), a court shall quash or modify a subpoena requiring a nonparty witness to travel more

than 100 miles "except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held." That is, while Rule 45(c)(3)(B)(iii) permits a court to quash or modify a subpoena if a nonparty witness will "incur substantial expense to travel more than 100 miles to attend trial," it clearly gives this court compulsory subpoena authority throughout the entire state so long as a witness does not incur substantial expense to travel more than 100 miles. Inter-island Hawaii travel is significantly cheaper than travel between Hawaii and other states and, if paid for or reimbursed by Madoff, is no impediment to enforcement of a trial subpoena by this court. This court therefore could compel Hawaii witnesses to appear in person at trial in Honolulu.

        c.    **For Purposes of Defendants' Motions to Dismiss, Madoff Is Not Required to Specify Which Witnesses He Expects to Have Physically Present at a Hawaii Trial.**

Defendants also predict that Madoff will actually call far fewer Hawaii witnesses at trial than he now lists. Defendants point out that Madoff fails to demonstrate which of these witnesses, if any, have actually committed to testifying at trial. The court is unpersuaded that these circumstances support dismissal. First, the court does not expect Madoff to narrow the list of potential trial witnesses before discovery has begun.

26

Second, even if Madoff obtained commitments from witnesses to appear in person at a trial set one year away, he would be powerless to enforce those commitments.

> **3.   Madoff Has Not Shown That Enforcement of the Forum Selection Clause Would Contravene Strong Public Policy in Hawaii.**

Madoff additionally argues that the forum selection clause is unreasonable under the third M/S Bremen exception because enforcement would contravene Hawaii's public policy regarding (1) state park use regulation, and (2) local dispute adjudication.  He points to no authority in support of this argument.  Cf. Willis v. Nationwide Debt Settlement Grp., 878 F. Supp. 2d 1208 (D. Or. 2012) (the forum selection clause was unenforceable under the third M/S Bremen exception given an Oregon statute prohibiting enforcement of forum selection provisions in consumer contract disputes under arbitration).  Madoff thus fails to demonstrate that the enforcement of the forum selection clause would contravene strong public policy in Hawaii.[7]

---

[7]The parties have grappled with a separate policy issue: the forum selection clause's possible preclusion of federal litigation.  The clause does this without expressly stating that it is doing so, as the forum selection clause in issue here does not include the name of a particular state court. It therefore did not give express notice that a suit could not be filed in federal court.  The clause provides only that "any suit or proceeding must be filed or entered into only in Jefferson County, Colorado."  There is no federal court in Jefferson County.  See http://www.cod.uscourts.gov (listing district court locations in Denver, which is in the City and County of Denver;

V.        **CONCLUSION**.

Drawing all reasonable inferences in favor of Madoff, the court determines that the forum selection clause is unreasonable under the second M/S Bremen exception.  Given, among other things, the number of witnesses, the nature of the dispute, and the advantage to Defendants of possibly being the only witnesses to appear in person in Madoff's liability case in chief, this court concludes that Madoff would be deprived of a meaningful day in court if required to litigate in Jefferson County, Colorado.  Even if witnesses from Hawaii agreed to fly to Colorado, if they later changed their minds, they could not be compelled to appear at trial in Colorado in person.  Under the circumstances presented on these motions, the grave difficulty or impossibility of presenting significant in-person testimonial evidence at a trial in Colorado effectively precludes Madoff from

---

in Colorado Springs, which is in El Paso County; in Grand Junction, which is in Mesa County; and in Durango, which is in La Plata County).  The clause therefore may refer to lawsuits only in Jefferson County state courts, although that is unlikely to be obvious to a layperson from the face of the agreement.

This court need not determine whether the waiver of a federal forum in the present case does or does not render the clause fundamentally unfair under Shute.  As Defendants have noted, information about whether a particular location includes a federal district court is publicly available even if not common knowledge to a normal layperson.  Whether that suffices to negate the need for an express warning that a federal forum is being waived is not something the present order attempts to decide. This court instead bases its ruling on the unreasonableness ground it discusss at length.

having a meaningful day in court.  Therefore, Defendants' motions

to dismiss, ECF Nos. 21 and 22, are DENIED.  If, upon conducting

discovery, Defendants have a different record upon which to base

a motion, they may, of course, file another motion seeking to

enforce the forum selection clause.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 28, 2013.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Madoff v. Bold Earth Teen Adventures, et al., Civil No. 12-00470 SOM/RLP;
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS