IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MICHAEL MADOFF, Individually and as Administrator of the Estate of TYLER MADOFF, Deceased; and MARIANNE MADOFF, | ) ) ) ) ) ) | CIVIL NO. 12-00470 SOM/RLP<br><br>ORDER DENYING HAWAII PACK AND PADDLE DEFENDANTS' MOTION TO DISMISS; ORDER DENYING BOLD EARTH DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| AMERICA'S ADVENTURE, INC., dba BOLD EARTH TEEN ADVENTURES; ABBOTT WALLIS; ANDREW MORK; KELSEY TYLER; HAWAII PACK AND PADDLE LLC; BARI MIMS; NOLAN KEOLA A. REED; and LETITIA MIMS, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**ORDER DENYING HAWAII PACK AND
PADDLE DEFENDANTS' MOTION TO DISMISS;
ORDER DENYING BOLD EARTH DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

I.        **INTRODUCTION.**

On July 4, 2012, fifteen-year-old Tyler Madoff was
killed when he was swept out to sea near Kealakekua Bay on the
Big Island of Hawaii during a kayaking and hiking adventure tour
operated by Defendant America's Adventure, Inc., dba Bold Earth
Teen Adventures.

On August 21, 2012, the Complaint in this matter was
filed.  See ECF No. 1.  In July 2013, a motion to file a First
Amended Complaint was filed.  See ECF No. 101.  Defendants did

not oppose this request.  See ECF Nos. 109, 111, and 122.  Leave

to file the First Amended Complaint was granted.  See ECF No.

127.   On August 6, 2013, the First Amended Complaint was filed.

See ECF No. 128.

Plaintiffs are Tyler's mother and father, Marianne and

Michael Madoff, as well as Michael Madoff in his capacity as

Administrator of Tyler's estate.  See id.  Defendants are

America's Adventure, Inc., dba Bold Earth Teen Adventures; its

President and founder, Abbott Wallis; and its employees Andrew

Mork and Kelsey Martin.  Also named as Defendants are a Bold

Earth contractor called Hawaii Pack and Paddle LLC; its owner

Bari Mims; and its employees, Nolan Keola Reed and Letisha Mims

(collectively, "Defendants").

The First Amended Complaint asserts claims for gross

negligence (Count I), negligence (Count II), wrongful death

(Count III), pain and suffering (Second "Count III"), negligent

infliction of emotional distress (Count IV), negligent hiring,

supervision, retention, and training (Count V), and negligent

misrepresentation (Count VI).  See id.

Before this court are a second motion to dismiss this

case because a forum selection clause states that any action

shall be filed in Colorado, and a motion for partial summary

judgment with respect to the punitive damage claim.  Although not

expressly stated in the motions, both motions, if granted, might

avoid application of section 663-1.54(a) of Hawaii Revised
Statutes to this matter.

The court treats the motion to dismiss filed by Hawaii
Pack and Paddle, Bari Mims, Nolan Keola Reed, and Letisha Mims
(collectively, "Hawaii Pack and Paddle Defendants") as a motion
for reconsideration of this court's order of March 28, 2013.  See
ECF No. 68.  Hawaii Pack and Paddle Defendants are unpersuasive
in arguing that the court should change its earlier ruling at
this time.

With respect to the motion for partial summary
judgment, America's Adventure, Abbott Wallis, and Kelsey Martin
(collectively, "Bold Earth Defendants"), are also unpersuasive.
By failing to oppose the motion seeking leave to file the First
Amended Complaint, they may have waived any objection to the
assertion of the punitive damage claim absent compliance with
Colorado law.  Even if they did not waive this objection, Bold
Earth Defendants fail to show on the present motion that Colorado
law applies.  The court leaves for further adjudication the issue
of whether Colorado or Hawaii law governs this case.

II.      **BACKGROUND FACTS.**

Abbott Wallis is the sole shareholder of America's
Adventure, Inc., dba Bold Earth Teen Adventures.  See Depo. of
Abbott Wallis at 96-97, Aug. 21, 2013, ECF No. 198-1, PageID
# 2018.  Bold Earth is a Colorado corporation run out of Wallis's

home.  Id.; Aff. of Abbott Wallis ¶ 1, ECF No. 21-3, PageID #
121.  Bold Earth offers adventure trips to young people.  See
Wallis Aff. ¶ 2.

On or about January 31, 2012, a Trip Application was
submitted for Tyler Madoff to go on Bold Earth's "Ultimate
Hawaii" trip, beginning July 1, 2012.  See ECF No. 190-3.  As
part of this application, the box next to "Parent and or guardian
has read and agrees to the Liability Release" was checked.  Id.,
PageID # 1763.  In relevant part, the Liability Release states,
"We understand and agree that Colorado substantive laws will
govern this Application and Release, any dispute we have with BE,
and all other aspects of our relationship with BE."  Id., PageID
# 1765.  Tyler's mother, Marianne Madoff, subsequently signed a
Parent Agreement that stated, "I agree that Colorado substantive
law will govern this Agreement and all other aspects of my and my
child's relationship with Bold Earth."  See ECF No. 196-1, PageID
# 1938.

The Liability Release states in a small font that it

is given in consideration of the services
provided by America's Adventure, Inc (d/b/a
"Bold Earth Adventures") and its owners,
officers, directors, employees and agents . .
. , as well as its contractors listed below
[including Hawaii Pack & Paddle], in allowing
applicant to participate in the [Bold Earth]
program.  Applicant ("participant") and
his/her parent or guardian ("parent")
(collectively "we") agree we have carefully
read, fully understand and agree to be bound
by this release, the terms and conditions

4

contained in the Application above, the
brochure and website, and the
Participation/Unity Agreement.  We understand
that [Bold Earth] activities include inherent
and other risks, hazards and dangers
("risks") that can cause injury or other
loss, both common and severe.  We agree that
[Bold Earth] representatives are and have
been available to answer any questions about
these activities, and the associated risks.
Therefore, we agree to accept and assume the
inherent and other risks and any injury or
other loss resulting from those risks or
resulting from participant's negligence or
other misconduct.  In addition, I (adult
participant and/or parent, for myself, and if
participant is a minor, for and on behalf of
my participating minor child) agree to
release [Bold Earth] and its contractors [,
including Hawaii Pack & Paddle,] . . . with
respect to any and all claims, liabilities,
suits, and expenses ("claims"), including
claims resulting from [Bold Earth's] or any
contractor's negligence (but not their gross
negligence or willful or wanton misconduct),
for any injury, damage, death or other loss
to me/my child in any way connected with
my/my child's enrollment or participation in
these activities, or use of any equipment,
facilities, or premises.

ECF No. 190-3, PageID # 1765.

Although the "Ultimate Hawaii" trip was to occur in

Hawaii, the Liability Release for that trip was at odds with

section 663-1.54 of Hawaii Revised Statutes.  That statute

states:

(a) Any person who owns or operates a
business providing recreational activities to
the public, such as, without limitation,
scuba or skin diving, sky diving, bicycle
tours, and mountain climbing, shall exercise
reasonable care to ensure the safety of
patrons and the public, and shall be liable

for damages resulting from negligent acts or omissions of the person which cause injury.

Section 663-1.54 then clarifies that

> (b) Notwithstanding subsection (a), owners and operators of recreational activities shall not be liable for damages for injuries to a patron resulting from inherent risks associated with the recreational activity if the patron participating in the recreational activity voluntarily signs a written release waiving the owner or operator's liability for damages for injuries resulting from the inherent risks.  No waiver shall be valid unless:
>
>> (1) The owner or operator first provides full disclosure of the inherent risks associated with the recreational activity; and
>>
>> (2) The owner or operator takes reasonable steps to ensure that each patron is physically able to participate in the activity and is given the necessary instruction to participate in the activity safely.
>
> (c) The determination of whether a risk is inherent or not is for the trier of fact. As used in this section an "inherent risk":
>
>> (1) Is a danger that a reasonable person would understand to be associated with the activity by the very nature of the activity engaged in;
>>
>> (2) Is a danger that a reasonable person would understand to exist despite the owner or operator's exercise of reasonable care to eliminate or minimize the danger, and is generally beyond the control of the owner or operator; and
>>
>> (3) Does not result from the negligence, gross negligence, or wanton act or omission of the owner or operator.

The legislative history for section 663-1.54 indicates that the Hawaii legislature did not intend to allow owners and operators of recreational activities in Hawaii to have customers waive claims against operators arising out of negligent conduct:

> Your Committee finds that this measure is necessary to more clearly define the liability of providers of commercial recreational activities by statutorily invalidating inherent risk waivers signed by the participants.  Your committee further finds that these inherent risk waivers require providers to disclose known risks to the participant, but these waivers do not extend immunity to providers for damages resulting from negligence.  Thus, it is the intent of your Committee that this clarification in the law will appropriately reduce frivolous suits without increasing risks to participants.

Haw. Stand. Comm. Rep. No. 1537, 1997 Senate Journal, at 1476.

Tyler and his mother also signed a Participation Unity Agreement stating, "Safety rules and the buddy system must be respected at all times. . . . Staff must know and approve of your whereabouts 24 hours a day." See ECF No. 196-2, PageID # 1939.

Defendant Andrew Mork, who worked for Bold Earth, first met Tyler Madoff on July 1, 2012, at the airport in Kona, Hawaii. See Depo. of Andrew Mork at 7, Aug. 20, 2013, ECF No. 190-5, PageID # 1797.  Mork and Kelsey Martin were the co-leaders of the trip Tyler was on. Id. at 21, PageID #1798.

7

Before Mork was hired by Bold Earth in 2011, he had, in
2009, pled no contest to a disorderly conduct charge arising out
of an incident in which the police found a "marijuana stem" in
the couch at his apartment.  See id. at 30-32, PageID # 1800.
Mork was also convicted of misdemeanor possession of marijuana in
2008 or 2009, but that conviction was expunged.  See id. at 44-
45, PageID # 1803.  Mork admitted that, during the time he was
employed by Bold Earth, he smoked marijuana, but says that he
never smoked marijuana when leading a trip.  Id. at 45.  Mork
says that he bought and smoked marijuana right before the trip at
issue in this case, during the "pre trip" phase before the
customers showed up.  Id. at 56-57, PageID # 1804.  Mork had also
been thrown out of a bar in 2011 because he was drunk.  Id. at
175, PageID # 1820.  Finally, Mork was found not to have been
wearing his seat belt when in a car and found not to have stopped
at a stop sign when driving.  Id. at 35 and 39, PageID #s 1801-
02.

Wallis says that, had he known of these events, he
would not have hired Mork.  See Wallis Depo. at 26, ECF No. 198-
2, PageID # 2015.  However, nothing in the record directly
connects Mork's criminal and driving history with Tyler's death.
That is, there is no indication that Mork was drunk or stoned
when Tyler drowned, and the drowning did not involve driving a
car at all.  Moreover, had Wallis refused to hire Mork because of

his arrest and court record, he might have run afoul of section 378-2 of Hawaii Revised Statutes, which, in relevant part, prohibits discrimination in the hiring of a person based on his or her arrest and court record.

Wallis says that Mork had been fingerprinted and had passed background checks by the Colorado Bureau of Investigations and the Federal Bureau of Investigations.  However, Wallis could not say what was involved with any background check.  Id. at 50-52, PageID # 2017.

On July 4, 2012, Nolan Keola Reed and Letisha Mims, Hawaii Pack and Paddle employees, were the guides for the kayak trip scheduled for that day by Bold Earth.  See Mork Depo at 126-27, 156, PageID #s 1813 and 1818.  Apparently, Bold Earth had contracted with Hawaii Pack and Paddle to supply these guides, and Hawaii Pack and Paddle had a State of Hawaii permit to provide recreational activities.  Bold Earth did not tell Mork about any limitation as to time, number of persons, or area imposed by the permit to use the area for recreational activities.  Id. at 131-33, PageID # 1814.

When the group left on the morning on July 4, 2012, Mork had not asked the Hawaii Pack and Paddle guides about weather or surf conditions.  Id. at 160, PageID # 1819.  Mork, Martin, and the trip participants had left their cell phones in the van.  See Deposition of Kelsey Martin at 175, Aug. 22, 2013,

9

ECF No. 197-1, PageID # 2011.  The participants landed their
kayaks and began hiking, leaving their life jackets behind.  Id.
After about ten minutes, the group left the established hiking
trail and went toward the shoreline.  See id. at 176-77, PageID
# 2011.  The group then sat in tide pools after one of the
participants asked to sit there.  See Mork Depo. at 214, ECF No.
190-5, PageID # 1823.  Mork says that, when asked whether
participants could sit in the tide pools, he looked at Letisha
Mims, who nodded that it was okay to do so.  Id. at 214-15, ECF
No. 190-5, PageID # 1823.

A large wave hit the people sitting in the tide pools.
Id. at 236, PageID # 1825.  This was followed by a second wave.
Id. at 239, PageID # 1826.  When a third wave hit them, Mork saw
Tyler and thought he had been rendered unconscious.  Tyler was
swept into the ocean.  Mork did not dive in to rescue him, as he
had not seen where the body went.  Id. at 246-49, PageID # 1827.

In a written statement dated July 18, 2012, Mork
explained that he knew that Tyler was in the water.  He and Reed
searched the area.  Reed spotted a body in the water and dove in.
It turns out that this was the body of Matt Alzate.  Upon
realizing this, Mork continued to look for Tyler.  He and Letisha
Mims flagged down a nearby fishing vessel to help in the rescue
of Alzate.  A little while later, a zodiac tour boat arrived to
help search for Tyler, presumably called by the people in the

fishing vessel.  Mims and Mork continued to search for Tyler for about an hour before the fire department arrived via helicopter. <u>See</u> ECF No. 196-3, PageID # 1943.

Mork says he had no training in ocean conditions.  <u>See</u> Mork Depo. at 84, ECF No. 190-5, PageID # 1807.  Martin similarly says she received no training about ocean conditions or rescuing people.  <u>See</u> Martin Depo. at 87, ECF No. 197-3, PageID # 2009.

On September 14, 2012, the Board of Land and Natural Resources for the State of Hawaii considered whether to revoke Hawaii Pack and Paddle's permit to go to Kealakekua Bay Historical Park, noting that the July 4, 2012, tour had exceeded the authorized number of people, exceeded the time limitation, and deviated from areas authorized by the permit.  <u>See</u> Amended Minutes for the Meeting of the Board of Land and Natural Resources at 6-7, Sept. 14, 2012, ECF No. 196-8, PageID #s 1971-72.  It appears that the Board of Land and Natural Resources decided to revoke the permit at that meeting.  <u>See</u> <u>id.</u>, PageID # 1978.

**III.      MOTION TO DISMISS.**

Rule 12(b)(3) of the Federal Rules of Civil Procedure governs motions to dismiss for improper venue.  The standard for a Rule 12(b)(3) motion was set forth in this court's order of March 28, 2013.  <u>See</u> ECF No. 68.  Hawaii Pack and Paddle essentially argues that this court should modify its order of

11

March 28, 2013, which referred to Plaintiffs' identification of 43 Hawaii-based witnesses.  Claiming that few of those witnesses will actually be called at trial, Hawaii Pack and Paddle seeks reconsideration of that order, making this motion governed by Local Rule 60.1, instead of Rule 12(b)(3).  Local Rule 60.1 allows reconsideration when there has been discovery of new material facts not previously available, an intervening change in the law, or a manifest error of law or fact.  Hawaii Pack and Paddle fails to justify reconsideration notwithstanding its belief that many of the 43 Hawaii-based witnesses may not actually testify at trial.

First, the motion presumes to know which witnesses Plaintiffs will call to testify about what subjects, even before discovery is complete.  It then presumes that the court will preclude many of the witnesses because their testimony will be cumulative or barred by Rule 403 of the Federal Rules of Civil Procedure.  It also claims that certain witnesses are statutorily precluded from testifying.  The court denies the motion because the court cannot tell at this time which witnesses will be called to testify or what the witnesses will actually testify about.

Even if fewer than 43 Hawaii-based witnesses ultimately testify, the court cannot, on the present record, rebalance the factors discussed in the court's earlier order.  The exact nature of the testimony of each witness is not actually in front of this

court, and the court has before it no motions to preclude testimony.  The court cannot assume that it would preclude any testimony without examining the unique circumstances surrounding that testimony.  It may well be that Plaintiffs will not be calling all 43 Hawaii-based witnesses.  But the court cannot, at this time, make a determination as to how many of those witnesses will actually be allowed to testify based on Hawaii Pack and Paddle's investigation into which witnesses it thinks are likely to testify.  As noted above, discovery is ongoing and may clarify which witnesses will testify about what.  Under the circumstances presented here, the court declines to modify its earlier order, determining that its reasoning applies even if fewer than 43 Hawaii-based witnesses testify.

## IV.        MOTION FOR SUMMARY JUDGMENT.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The movants must support their position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory

13

answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth specific facts showing that there is a genuine issue for trial.  <u>T.W. Elec. Serv.</u>, 809 F.2d at 630.  At least some "'significant probative evidence tending to support the complaint'" must be produced.  <u>Id.</u> (quoting <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 290 (1968)); <u>see</u> <u>also</u> <u>Addisu</u>, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact.").  "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." <u>Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.</u>, 818 F.2d 1466, 1468 (9th Cir. 1987) (<u>citing</u> <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 587).  <u>Accord</u> <u>Addisu</u>, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

In adjudicating summary judgment motions, the court must view all evidence and inferences in the light most favorable to the nonmoving party.  <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as

well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  Id.  When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  Id.

Bold Earth Defendants argue that the court should apply Colorado substantive law to this dispute because Plaintiffs agreed to that application.  They point out that section 13-21-203(c)(I) of Colorado Revised Statutes provides that a claim for exemplary damages may not be included in an initial claim for relief and "shall be allowed by amendment to the pleadings only after the passage of sixty days following the exchange of initial disclosures pursuant to rule 26 of the Colorado rules of civil procedure and the plaintiff establishes prima facie proof of a triable issue."  Bold Earth Defendants' partial summary judgment motion seeks dismissal of the punitive damage claim in the First Amended Complaint without prejudice, arguing that Plaintiffs did not properly move to add the punitive damage claim.  Bold Earth Defendants are not seeking summary judgment based on a lack of evidence supporting the punitive damage claim.

Bold Earth Defendants seek dismissal of the punitive damage claim contained in the First Amended Complaint even though they did not oppose the filing of that document.  In other words,

Bold Earth Defendants did not argue that the request for punitive damages was improper at the time Plaintiffs sought to amend their Complaint in July 2013 to add Tyler's mother as a Plaintiff.  See ECF No. 109.

Under these circumstances, even assuming Colorado law applies, Bold Earth Defendants may have waived any challenge to the procedural propriety of the First Amended Complaint.  See Haldeman v. Golden, 2007 WL 3238673, *2 (D. Haw. Nov. 1, 2007) ("failure to raise an issue in a timely manner results in waiver of that issue").  A waiver would obviate the need for this court to determine whether Plaintiffs have satisfied the prepleading requirements of Colorado law.

Bold Earth Defendants argue that they could not be said to have waived their argument because they raised the application of section 13-21-203(c)(I) as a defense in their Answer to the First Amended Complaint.  However, given the Colorado provisions setting requirements that must be met before a punitive damage claim may even be asserted, it is reasonable to think that any challenge to the inclusion of a punitive damage claim in the First Amended Complaint should have been raised at the time the court was examining whether to allow the filing of the First Amended Complaint.

Even if Bold Earth Defendants have not waived their challenge, they fail to meet their initial burden on the present

17

motion for partial summary judgment because they fail to establish that Colorado law governs this dispute.  The motion assumes that Colorado law applies simply because the choice of law provision says so.  The moving papers entirely fail to acknowledge that there are broader legal principles governing whether a court may apply a choice of law provision.  The motion fails to meet the initial burden of demonstrating that Bold Earth Defendants are entitled to summary judgment as a matter of law. Accordingly, the court need not determine whether the punitive damage claim was properly added under Colorado law.

In Airgo, Inc. v. Horizon Cargo Transport, Inc., 66 Haw. 590, 595, 670 P.2d 1277, 1281 (1983), the Hawaii Supreme Court applied Restatement (Second) of Conflict of Laws § 187 to determine whether to apply a choice of law provision.  At the hearing on the present motion, Bold Earth Defendants argued that this court should blindly apply section 187(1), which states, "The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue."  Without assisting the court by providing full briefing on the matter, Bold Earth Defendants ask this court to apply section 187(1), even though it is not at all clear on the present motion that avoidance of section 663-1.54 of Hawaii Revised Statutes is

18

something "the parties could have resolved" via provisions in their agreements.

In section 187(2), the Restatement notes that the law of the state chosen by the parties to govern their contractual rights and duties will be applied unless (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state.  In the present case, to grant summary judgment on the punitive damage claim would require this court to rule that Colorado law applies.  This court declines to so rule without an examination as to whether the release of Plaintiffs' negligence claims would be contrary to what may be fundamental Hawaii policy as expressed in section 663-1.54 of Hawaii Revised Statutes.  That statute clearly provides that owners and operators of recreational activities shall be liable for damages resulting from negligent acts.  This court declines to rule that Colorado law trumps Hawaii law without an express raising of the issue and the benefit of the back-and-forth briefing of that issue that would flow from moving papers that clearly framed the issue.

Bold Earth Defendants' citation of <u>Gemini Insurance Company v. Kukui`ula Development Company</u>, 855 F. Supp. 2d 1125 (D. Haw. 2012), without further analysis, does not establish that

this court should apply Colorado law in this case.  Gemini involved an insurance contract with a choice of law provision. Judge Leslie E. Kobayashi predicted in Gemini that Hawaii courts would apply a "some nexus" test to a contractual choice of law provision, stating that "the parties' choice of law provision will be upheld if that law has some nexus with either the parties or the policy."  Id. at 1141.  But Gemini did not involve the application of a choice of law provision that might allow Defendants to use another state's law to escape liability for conduct when Hawaii law specifically imposes such liability.

Even assuming that section 13-21-203(c)(I) of Colorado Revised Statutes applies, Bold Earth Defendants' argument that the punitive damage claim was improperly added may well be a procedural argument.  Certainly, to the extent the statute says that an amendment to the pleadings to add a punitive damage claim may come only "after the passage of sixty days following the exchange of initial disclosures pursuant to rule 26 of the Colorado rules of civil procedure," the statute refers to the timing of when leave may be sought to assert the claim, not to the substance of the punitive damage claim itself.

In a diversity case, this court applies state substantive law and federal procedural law.  See Zamani v. Carnes, 491 F.3d 990, 995 (9th Cir. 2007).  The court recognizes that, in Hartshorn Properties, LLC v. BNSF Railway Company, 2006

WL 3618292 (D. Colo. Dec. 7, 2006), the federal district court applied a similar Colorado procedural rule.  But the order issued in that case addressed a motion for reconsideration of an order allowing the plaintiff in that case to file an amended complaint with a punitive damage claim.  Calling the need to file an additional pleading a "minor imposition," the court ruled that the plaintiff had demonstrated a prima face case of a triable issue concerning punitive damages.  Bold Earth Defendants do not show that application of section 13-21-203(c)(I) of Colorado Revised Statutes in this case would similarly be nothing more than a "minor imposition."

Regardless of whether Plaintiffs did or did not identify a triable issue of fact as to punitive damages before seeking leave to file the First Amended Complaint, Bold Earth Defendants agreed to the filing of that pleading.  Bold Earth Defendants say that Plaintiffs could immediately seek leave to file a Second Amended Complaint that includes the punitive damage request if the court dismisses the punitive damage claim as improperly raised in violation of section 13-21-203(c)(I).  This defense position suggests that Bold Earth Defendants read section 13-21-203(c)(I) as raising procedural, not substantive, requirements.  If those requirements are procedural, they do not govern this federal diversity case.

Because Bold Earth Defendants have failed to meet their initial burden of demonstrating as a matter of law that the court should apply Colorado law and dismiss the punitive damage request contained in the First Amended Complaint, the court denies the motion for summary judgment.  The court is not here deciding whether Hawaii or Colorado law applies.  Instead, this ruling is premised on Bold Earth Defendants' failure to meet their initial burden as movants.  Any party may file a motion seeking a determination as to whether Hawaii or Colorado law applies to this case.  Any such motion should directly address the applicability of the parties' choice of law provision in light of section 663-1.54 of Hawaii Revised Statutes.

**V.      CONCLUSION.**

The court denies the reconsideration motion styled as a motion to dismiss and the motion for partial summary judgment with respect to the punitive damage claim.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 21, 2013.



　　/s/ Susan Oki Mollway　
Susan Oki Mollway
Chief United States District Judge

Madoff, et al. v. America's Adventure, Inc., et al., CIVIL NO. 12-00470 SOM/RLP; ORDER
DENYING HAWAII PACK AND PADDLE DEFENDANTS' MOTION TO DISMISS; ORDER DENYING BOLD EARTH
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT